## PLATTO VS. CADY.

| 12 | 461 |
|----|-----|
| 75 | 367 |

The assignment by a married man of a lease of a lot, and his sale of the dwelling house on the lot, occupied by him as a homestead, are not within the disability imposed upon the husband, by section 24 of chapter 134 of the Revised Statutes of 1858, in respect to the alienation of a homestead without the signature of the wife.

APPEAL from the Circuit Court for *Milwaukee* County.

The complaint in this case, which was filed in 1859, alleged that the plaintiff, *Platto*, had an estate, as tenant for a term of years, in certain premises therein described, which term would expire on the first day of May, 1861; that he was entitled to the possession of said premises; and that the defendant unlawfully withheld the possession thereof from him. The defendant demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, and specified the following objections : "1. It does not state facts showing any right or title in the plaintiff, nor how, nor through whom the title was derived. 2. It does not state who is the plaintiff's landlord, nor that he has any landlord, nor that any person under whom the plaintiff claims ever had title or possession. 3. It does not state that the plaintiff was ever in possession of the premises claimed, or that he was ever tenant of or under any person; nor is any tenancy whatever stated in said complaint."

The circuit court over-ruled the demurrer, with leave to answer. The defendant then answered, first, by a denial, of every averment in the complaint, and for a further defense, alleged that on the 13th day of April, 1855, one Herring was in possession of said premises, under a lease which would expire about the first day of May, 1861, and owned and occupied a frame building situated thereon, with appurtenan-

ces ; that Herring was a married man, and with his wife and family occupied said building and premises as a homestead ; that on the day last mentioned the plaintiff obtained from Herring an assignment of said lease, and a bill of sale of the said building and appurtenances, but did not obtain the signature of Herrick's wife to the assignment or the bill of sale ; that on the same day the plaintiff leased the said building and appurtenances to Herring for the term of two years from the 1st of May, 1859 : that on the 25th day of June, 1859, while Herring was so in possession of said premises, and claiming the same as his homestead, and before any lawful alienation or sale by him of said premises, or of said building and appurtenances, the said Herring and his wife in due form released and quit-claimed the said premises, with the building, &c., to the defendant. To this portion of the answer the plaintiff demurred, on the ground that it was insufficient to constitute a defense. The court sustained the demurrer, and ordered that judgment be entered, "that the plaintiff hath an estate as a tenant for a term of years in the premises described in the complaint herein, &c ; and is entitled to the possession of the same, and that he recover the same," and also that he recover costs &c., from which judgment the defendant appealed.

The complaint and answer were verified.

*George W. Lakin*, for appellant :

1. The plaintiff's demurrer reaches back to the first error. (*Schwab vs. Furniss*, 4 Sandf., 704.) The first error is in the complaint, which does not state a cause of action. All that the plaintiff alleges in respect to title is, "that he has an estate as tenant for a term of years," &c. That is not a *fact*, but a conclusion of law. The *commencement* of his particular estate should have been shown. 2 Salk., 526 ; Stephen on Pl., pp. 306–308. Leases for years may be made to commence *in futuro*. Kent's Comm., 56. If the end of the term only is stated, as here, it is open to the inference that it is to commence *in futuro*. Again, the complaint does not inform the defendant what title he is called upon to combat. If the plaintiff had stated that he was tenant for years—stating the duration of the term, and under whom he claimed,

or if he had stated who was entitled to the reversion, it might have been sufficient. 2. The plaintiff's demurrer is directed only to the second defense, and if that were found insufficient, the issue of fact, raised by the complaint and the first defense, still remained to be tried. 3. The second defense is sufficient. It is founded upon the statute relating to the homestead exemption. R. S., chap. 134, secs. 23–31. It brings the premises within that statute, by showing that they were "owned and occupied" by Herring, a married man. For what constitutes *ownership?* "The lowest and most imperfect degree of title consists in the mere *naked* possession, or actual occupation of the estate, without any apparent right." 2 Bl. Comm., 195. If a debtor is in possession of a house and lot, even by such an imperfect title as this, making the same his homestead, his judgment creditor cannot levy upon and sell them, and divest the owner of such title.

*J. V. V. Platto*, respondent, in person:

1. The lease of the land and the buildings thereon are personal property. R. S., chap. 88, § 5; 2 Kent's Comm., 342; *Case of Gay, Adm'r*, 5 Mass., 419; *Doty vs. Gorham*, 5 Pick., 487; *Marcey vs. Darling*, 8 Pick., 283; *Wells vs. Banister*, 4 Mass., 514. 2. As it is not claimed that the property in question was the separate property of the wife of Herring, the grantor, it must be presumed to have belonged to Herring, as the wife possesses no property in the chattels acquired by the husband. 3. The property in question is not a homestead in fact, or in contemplation of law. The opinion of this court in *Phelps vs. Rooney*, 9 Wis., 70, absolutely negatives the theory that sec. 24, chap. 134, R. S., applies where the owner of a house does not also own the land whereon the house stands. See also *Hoyt vs. Howe*, 3 Wis., 752. 4. The statute under which the conveyance to the plaintiff of the property in question is claimed to be invalid, is in derogation of the common law, and must be strictly construed. *Waller vs. Harris*, 20 Wend., 561; 1 Kent's Comm., 462; *Smith vs. Spooner*, 3 Pick., 229; *Melody vs. Reab*, 4 Mass., 473; *Fairlee vs. Corinth*, 9 Vt., 269; *Mallan vs. May*, 13 Mees. & Wel., 511; *Barker vs. Esty*, 19 Vt., 131; *Phelps vs.*

*Rooney, supra.* Statutes are likewise to be construed with reference to the principles of the common law. 1 Kent, 464. 5. Section 24 of chap. 134, R. S., commences with the words, "*such* exemption," &c., and refers back to sec. 23. It cannot refer forward to sec. 28, and the disability which it creates does not apply to such property as is described in sec. 28.

October 15.

*By the Court,* PAINE, J. One Herring was the owner of a dwelling house upon a lot of which he had a lease. He was a married man, and occupied this dwelling house as his homestead. He sold the house to *Platto*, executing a bill of sale, and also assigned to him the lease, the wife not signing either the bill of sale or the assignment. He afterwards sold both the house and lease to *Cady*, the wife joining in the conveyances. This is a contest between *Cady* and *Platto* for the property, and it depends entirely on the question, whether the transfer to *Platto* was within the disability against alienating the homestead without the signature of the wife, imposed by the law now found in sec. 24, chap. 134, R. S., 1858. It was argued here by counsel on both sides, as though this turned upon the question whether the property could be considered as a homestead, and as exempt under the act. If it turned upon that, it would clearly be within the disability, for sec. 28, which was not referred to by either counsel, expressly provides that any person owning and occupying a house on land of which he is rightfully in possession by lease or otherwise, shall be entitled to the exemption. Whatever question might be raised as to whether such a property could be held exempt as a homestead, if this section had not been enacted, there is certainly no room for question on that point in view of its provisions.

But we do not think that the question presented on this appeal depends upon the other. Although it is conceded that this property might have been held as exempt from forced sale, by virtue of sec. 28, it does not follow that it was within the disability imposed upon the husband by sec. 24, as to alienation without the signature of the wife. It may be observed at the outset, that the principal object of the exemption laws is, to protect the debtor and his family

June Term, 1860.

PLATTO
v.
CADY.

from the seizure and forced sale of his property by his creditors. This is all that is included in the constitutional requirement on the subject. But it was undoubtedly competent for the legislature, in pursuance of what it deemed to be a sound public policy, to further protect the family of the debtor, by imposing upon him a disability even voluntarily to alienate the land owned by him and occupied as a homestead. But they need not necessarily impose it as to all homesteads. On the contrary, they might deem it wise to establish such a disability only in respect to homesteads where the interest of the occupier in the land was of a permanent character, without including all which were exempted from forced sale. And on a careful examination of the provisions of the statute, it seems to us that this is precisely what they have done.

Sec. 23 exempts a homestead consisting of a certain quantity of land "*owned* and occupied by any resident," &c. Sec. 24 provides that the mortgage or other alienation of *such* land by *the owner* thereof, if a married man, shall not be valid without the signature of the wife.

Now we do not undertake to say that these provisions intend only the absolute owners of the fee. On the contrary, we think they may well be held to include owners of a less interest. But we do not think they extend to the owners of such an interest as is mentioned in sec. 28. For the words of the statute seem expressly to exclude that idea. Its language is, that any person owning and occupying a dwelling house "on land *not his own*," may be entitled to hold the house exempt. Thus it will be seen that the disability imposed by sec. 24, relates to the alienation of land by the *owner* thereof, and the exemption privilege conferred by sec. 28, relates to a house owned by a man upon land not his own. The legislature evidently supposed that the case provided for in sec. 28, was not included in the previous sections relating to a homestead. They then enact it, giving the privilege of the exemption, but do not extend to the owner of such a house on land not his own, the disability which had been imposed upon the owners of lands used as homesteads in the previous section. It seems clear that there is no language em-

VOL. XII—30

ployed indicating any intention to extend the disability to cases provided for in sec. 28. And it being a familiar rule, that disabling statutes are not to be extended, by construction, to cases not clearly within their provisions, we should not feel at liberty to extend it to such a case, even though we might think the same reason existed for it in the one case as in the other.

But there may be good reason for a distinction between the two. Sec. 28 evidently relates to cases where the only interest of the party in the land is merely of a possessory character, and where no permanent ownership is contemplated. The house is treated, in that section, as the principal object of the exemption. And while the legislature might desire to protect such a temporary home from a forced sale, they might, at the same time, think it not necessary or wise to extend to it the same disability against alienation, which they had established in respect to those where the interest in the land was of a more permanent character.

For these reasons the judgment of the court below must be affirmed, with costs.