WILLIAM LAWVER AND WIFE

v.

TEUNIS S. SLINGERLAND.

Only the *signature* of the wife to a mortgage of the homestead by her husband is required by Section 93, Pub. Stat., page 570.

This is an appeal from an order of the District Court for Goodhue County, overruling a general demurrer interposed to the complaint. The allegations of the complaint are sufficiently stated in the opinion of the court.

BERRY & WATERMAN, for appellant.

I.   Under the homestead exemption act of this State, passed August 12th, 1858, a man owning and occupying a homestead, having a wife and minor children living thereon with him, may execute a valid legal mortgage upon the property, though his wife does not join with him in its execution. And no objection on the part of the wife or children, would be of any avail to defeat the claim of the mortgagee *at any time*, and certainly not until the mortgagor has died *without having obtained any other homestead*, and leaving his widow and minor children surviving him, and then only during the period of such widowhood and minority.   Public Statutes, pp. 569, 570, Secs. 1 and 2.

This statute and the previous one on the same subject, (R. S. p. 363, Secs. 93, 94,) being on the same subject matter, are

to be construed together. 1 Kent Com. 513; Dwarris on Statutes; 699; *People v. Utica Ins. Co.*, 15 John. R. 380.

The main distinction *in principle*, between the two exemption acts, is in the thousand dollar limitation in the first, not found in the last. As far as the purpose of the two acts is concerned, they are identical. But under the *first* this court has held a mortgage, executed by the husband alone, good. *Olsen v. Nelson*, 3 Minn. 53.

And under the *last*, that judgments are liens on homesteads from the time of docketing. *Tillotson v. Millard*, 7 Id. 319; *Folsom et al. v. Carli*, 3 Id. 333.

The statute of 1860, (Ch. 95,) changed the law in this particular only with reference to *general* liens, leaving it as it stood before with reference to *specific* ones.

The act of 1860 is amendatory of that of 1858, and in express terms allows the owner of a homestead to remove therefrom, or *sell* or *convey* the same, which clearly would give the right to mortgage.

The policy and spirit of the act, which is to prevent *forced* sale of certain specific property of unfortunate debtors, *without their consent*, upon execution or other process of court, are, at all events, fully met by the construction that the restriction upon alienation in the second section, has reference to the "exemption" or easement for homestead purposes, and not to the freehold or other ultimate estate in the soil.

II. At all events it is enough that the conveyance has her *signature*, in the absence of any fraud or deceit practiced upon her in obtaining it, though, *as to her*, it has no subscribing witness or acknowledgment.

This is the plain import of the statute, and besides it will be noticed that there is a difference in this respect between the provisions of the revised statutes, and the act of 1858.

The former required in terms any release or waiver to be subscribed and acknowledged by the wife, and no doubt, designedly, the Legislature made the change, looking upon the

*possible* but *inchoate* and *remote* interest of the wife for home-stead purposes, as of so temporary and transient a nature that she could very properly be allowed to waive the benefit of it by her simple consent, evidenced by her signature alone.

Under this statute, a wife's claim is, at most, like an inchoate right of dower, usufructuary only when perfect, and the claim would end with the death or subsequent marriage of the widow, and also upon the death or arrival of the children at the age of majority.

In this case no fraud or deceit was practiced upon Mrs. Lawver, and while she takes care to say she did not know she was executing a mortgage, she is equally careful not to inform the court what she *did* suppose she was signing.

And there is a very significant fact to be noted in this connection. She avers that she also signed a waiver of redemption in a separate instrument, but does not complain of ignorance of the contents of *that* instrument.

The whole thing savors very strongly of a case of *blissful* ignorance.

The foregoing points go to the merits of the whole case, and in our view are decisive against the plaintiff, under any possible framing of his bill.   But,

III.   This bill of complaint is manifestly insufficient, and presents no case calling for the interposition of the equitable powers of the court in any manner whatever.

(*a*.) Courts of equity can only be called upon to lend their aid in cases where a plain, adequate and complete remedy cannot be had at law.

(Revised Statutes, Ch. 94, Secs. 1 and 2, as amended by the act of March 6, 1852, which sections were not repealed by the act of March 5, 1853, notwithstanding the note to the contrary, at the bottom of page 670, of the Public Statutes.)

Even if they were repealed, those sections are merely declaratory of the common law on the subject.   Elementary

books on Equity Jurisprudence, *passim*, 1 Story, Eq. Juris. Sec. 33.

If the plaintiff's theory is correct, they would have a full and complete defense at law, when the purchaser, under the foreclosure, sought to obtain possesssion of the premises by ejectment or otherwise.

(*b*.) The bill is defective in not averring positively and affirmatively, that the mortgage was *not* given "to secure payment of the purchase money, or some portion thereof."

A mortgage given for that purpose is good without the wife's signature.

(Homestead act above cited, section 2, a simple declaratory privilege, not essential to preserve the vendor's lien.)

(*c*.) The allegations of the complaint, touching the foreclosure proceedings taken on the part of the appellant, fail completely of showing that the plaintiff could suffer any possible injury in consequence thereof.

Under these last two subdivisions of this general point, we remark *as to the first*, the plaintiff pleads the second section of the homestead act, and predicates his right to relief upon it, and where " an exception is incorporated in the body of the clause, he who pleads the cause ought to plead the exception." *Jones v. Axen*, 1 Lord Raymond 119 ; *Teel v. Fonda*, 4 John. 306 ; *Burr v. Van Buskirk*, 3 Cow. 269.

And *as to the second*, that the bill should show affirmatively, by proper averments, that the mortgage contained a power of sale to authorize a statutory foreclosure ; that the notice of sale was printed in a newspaper in the proper county, and when and where, and that the defendant intended to continue the publication, and make the sale as noticed. In short, that he had taken, at the time of filing the bill, and designed to continue to take, all proper legal steps under the statute in such a manner that if they were taken without objection on the part of the plaintiffs, the latter would suffer irreparable injury.

It is necessary in equity, as well as in common law pleading, that all the material facts essential to the plaintiff's claim, and to entitle him to the relief sought, should be plainly alleged, with all necessary and convenient certainty, as to the essential circumstances of time, place, manner, and other incidents, as no proof can be offered of facts not alleged in the bill. Story's Eq. Pl. Sec. 241; Ib. Sec. 257; *Crocket v. Lee*, 7 Wheat. 522; *Jackson v. Ashton*, 11 Peters, 229.

IV. Both technically and in matter of substance, the complaint in this case presents no cause of action, and the appellant's demurrer thereto for insufficiency was improperly overruled.

The order overruling the demurrer should, therefore, be reversed; and, if our view of the *merits* of the case is correct, judgment absolute in favor of the appellant be ordered.

Frank Ives, and Wilder & Williston, for respondents.

I. The mortgage in question having been executed (so far as it ever was executed) June 19, 1860, its validity is to be controlled and governed by the laws of this State then in force. *Oleson v. Nelson*, 3 Minn. 53.

II. That under the act of August 12, 1858—the homestead act, then and now in force—a mortgage upon the "homestead," executed by the husband alone, was void. It created no rights, absolute or contingent. Comp. Stat. p. 569–70, Secs. 92 and 93; *Oleson v. Nelson*, 3 Minn. 53.

The act in force prior to that of August 12, 1858, is found in the Revised Statutes, page 363, sections 93 and 94. Section 94 is as follows, so far as it relates to the question now before us:

"Such exemption shall not affect   *   *   *   *   nor extend to any mortgage thereof lawfully obtained."

Under this act, it was early held by the profession to be a matter of grave doubt whether a mortgage upon the home-

stead, executed by the husband only, was, or was not, "a mortgage thereof lawfully obtained," and on that question arose the case above cited of *Oleson v. Nelson.* The case, however, was not decided until after the law of August, 1858, was enacted.

That act, among other things, was designed to cover this ground, and to remove all doubt and uncertainty upon that question. It provides: "Such exemption shall not extend to any mortgage thereon lawfully obtained, but such mortgage, or other alienation of such land by the owner thereof, if a married man, shall not be valid without the signature of the wife to the same, unless such mortgage shall be given to secure the payment of the purchase money, or some portion thereof." Comp. Stat. p. 570, Sec. 93.

III. The wife must not only sign, but must in all *respects* legally execute the mortgage. It must be signed, witnessed and acknowledged.

The instrument, whether a mortgage or a deed, in fee, (and under this act they stand upon common groud,) to be valid or in any manner obligatory upon the husband and wife, must carry with its execution by both, all the forms and solemnities of the law.

The statute is incapable of any other construction, without in this regard destroying its whole object, and introducing a monstrous incongruity into the whole system and policy of the law.

"It is an established rule in the exposition of statutes that the intention of the law giver is to be deduced from a view of the whole and of every part of a statute taken and compared together. The real intention, when accurately ascertained, will always prevail over the literal sense of terms. When the expression in a statute is special or particular, but the reason is general, the expression should be deemed general. * * * And the reason and intention of the law giver will control the strict letter of the law, when the latter would lead to palpable injustice, contradiction and absurdity. * * * * *

When the *words* are not explicit the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and the objects and remedy in view, and the intention is to be taken or presumed according to what is consonant to reason and good discretion.   1 Kent Com. 8th Ed. mar. pp. 461–2.

IV.   An action to test the validity of this mortgage, to enjoin a foreclosure of, or sale under it, and to remove it as a cloud upon the title to the homestead, is a proper remedy and will be sustained.

1st.   *Under* the general principle of equity jurisdiction.

This mortgage appears upon its face a valid instrument, legally executed, and is recorded, all of which is shown by the complaint. Its non-validity is developed by outside facts. It was a cloud, and a cloud of record upon the title—more than this, the mortgagee had commenced a foreclosure by advertisement, and thus declared his intention to subject the property to the payment of the mortgage debt, and to deprive this family of their homestead.

Thus situated, the plaintiffs come into court and ask relief. See 2 Story's Eq. Jur. Secs. 698 to 701, *which* covers the whole ground; *Hamilton v. Batlin,* 8 Minn. 403; *Donnelly v. Simonton,* 7 Minn. 167; *Weller v. The City of St. Paul,* 5 Minn. 95; *Hamilton v. Cummings,* 1 John Ch'y, 517; *Bank of the United States v. Shultz,* 2 Ham. 471; *Pursall v. Elliot,* 6 Pet. 95.

2d.   Under the provisions of the 35th Sec. of Chap. 72 of the Compiled Statutes, which says: "An action may be brought by one person against another for the purpose of determining an adverse claim which the latter makes against the former for money or property upon an alleged obligation."   Comp. Stat. p. 629, Sec. 35; *Miller v. Rouse,* 8 Minn. 124.

The mortgagor in this case seeks to assert a claim to, *and* upon this "property," under and by virtue of this supposed mortgage, and the plaintiffs having the title and occupying the same as their homestead, bring this action for the purpose

of "determining" this "adverse claim," an action which, in our judgment, is clearly within and covered by this section of the law.

V. The position assumed by the appellant that this action cannot be maintained, for that upon the plaintiffs' own showing, the mortgage being invalid, they have a full and adequate remedy at law, is untenable.

The rule of equity upon that subject is not as broad as the *learned* counsel for the appellant seems to suppose, and in this State the rule, even as it exists or has existed elsewhere, is materially shorn of its proportions by our legislation and the decisions thereunder, as shown by the authorities quoted above.

Aside from this, the argument is well answered by the one fact that the mortgage is upon its face, and upon the face of the record, a legal and valid instrument. See cases above cited.

VI. It was unnecessary for the plaintiffs to aver that the mortgage was not made to secure the purchase money of the mortgaged premises.

If *made* for that purpose it is a matter of defense.

This is not an exception "in the body of the clause." It is an exception or proviso at the end of the clause.

The words are : "Unless such mortgage shall be given to secure the payment of the purchase money, or some portion thereof." This concludes the section.

But the complaint does in fact show that the mortgage was not made to secure the purchase money.

It avers the note and mortgage bore date and were executed, (so far as the latter ever was executed,) June 19, 1860. *That* the plaintiffs then occupied, and from about Nov. 1, 1853, had continuously occupied the premises as their homestead, and that during all that time the plaintiff, William Lawver, had been the owner in fee of this lot.

It necessarily follows, from these facts, that the mortgage was not, and could not have been made to secure the purchase money.

VII.   The objection taken by the appellant to the complaint, by reason of the absence of any allegation in relation to a power of sale in the mortgage, and of the supposed insufficiency of the averments *in* reference to the advertisement of sale, its publication, continuance, &c., are without force.

In our judgment, for reasons given above, the action can be maintained, resting solely upon the existence and record of the mortgage, ignoring wholly any proposed or attempted foreclosure.

In fact, however, the complaint does in substance cover both these points.   The averments are not, perhaps, framed with perfect artistic, or with the highest professional skill, yet we submit the substance is there.

It is alleged that the mortgage upon its face purports to have been duly executed, that it was duly recorded, and that it "is *in* the usual form of mortgages," and "that said defendant has now commenced foreclosing said mortgage by advertisement, a printed copy of which advertisement is hereto atached, marked A, and made a part of this complaint."

These allegations show an attempt, a beginning, on the part of the mortgagee to foreclose by advertisement, an avowed purpose to enforce the mortgage in this form, that it was a mortgage "in the usual form of mortgages," and, of course, contained, as every one knows, and no one better than the court, the usual power of sale, and they further show the acts of the mortgagee resting upon no other foundation, having no other possible basis than the *existence* of this power.

We submit that these facts and allegations constitute a full and complete answer to these objections of the appellant, and while we admit that the complaint is not incapable of improvement, that it contains facts constituting a good cause of action, and that the ruling of the court below should be sustained.

*By the Court*—BERRY, J.—The complaint shows that on the 19th day of June, 1860, William Lawver was the owner in fee simple of lot 6, block 47, in the city of Red Wing,

with the dwelling house thereon, and together with his wife, Eliza Lawver, and their children, resided thereon, occupying and claiming the same as a homestead; that on the same day, for the purpose of securing a certain note running from him to the appellant, the said William Lawver executed and delivered to the appellant a mortgage upon said lot, which mortgage was *signed* by the said Lawver and his wife, and duly recorded; that said mortgage is in the usual form, contains the usual covenants, and purports to have been duly acknowledged by the parties thereto, and by the said Eliza separately and apart from her said husband; that it was *signed* by the said Eliza in the presence of her husband, and of one witness only; that its contents were not explained to her before or at the time of signing; that she did not know at the time of signing what it was; that had she known that it was a mortgage upon the homestead, she would have absolutely refused to sign the same; that her acknowledgment was not taken separate and apart from her husband, but in his presence; that the said Eliza did not know that she had signed her name to a mortgage upon said homestead, until on or about September 1st, 1861; that the appellant has commenced to foreclose said mortgage by advertisement. A perpetual injunction is prayed for, and a decree declaring the mortgage null and void. A demurrer having been interposed and overruled, an appeal was taken to this court. In the view which we take of this case, it is only necessary to consider one point made on the hearing. The act for a homestead exemption, passed August 12th, 1858, and found on pages 569, 570, Pub. Stat., after declaring of what a homestead shall consist, and that it "shall not be subject to attachment, levy or sale upon execution, or any other process," &c., &c., proceeds to enact that, "such exemption shall not extend to any mortgage thereon lawfully obtained, but such mortgage or other alienation of such land by the owner thereof, if a married man, shall not be valid withont the

signature of the wife to the same, unless such mortgage shall be given to secure the payment of the purchase money or some part thereof." The owner of real property in fee simple having the right to mortgage the same at his pleasure, by virtue of his absolute ownership, may do so by conforming his conveyance to the ordinary requirements of statute. If there be any exception in the case of a homestead, it must be found in the statute to which the homestead right owes its existence. This, as we have already seen, provides that " a mortgage  *  *  * of such land by the *owner* thereof, if a married man, shall not be valid without the *signature* of the wife to the same, &c." The *signature* alone of the wife is required. The mortgage spoken of is, "a mortgage by the *owner*, if a married man," not a mortgage by the *owner and his wife*. The signature is required in token of her assent to a mortgage by the *owner*, her husband, not for the purpose of making her a party to the mortgage in the same sense in which her husband is a party. It is objected that to hold that the signature is sufficient without attestation or separate acknowledgment, is to introduce an anomaly into our law relating to the conveyance of real property or interests therein by married women. It was in the power of the Legislature to fortify the homestead by whatever safeguards were deemed necessary. If, in the exercise of legislative discretion it was deemed only necessary to provide that the homestead should not be mortgaged without the *signature* of the wife, no consideration of public policy can authorize us in putting such construction upon the law as will render the attestation of the signature, or an acknowledgment by the wife indispensable, however imperfect in our opinion may be the protection which any other construction would throw around the homestead. Under the old homestead law, page 363, Sec. 93, Rev. Stat. (1851,) it was provided that "no release or waiver of such exemption shall be valid, unless the same shall be in writing, subscribed by such householder and his wife, if he

have one, and acknowledged in the same manner as convey-ances of real estate are by law required to be acknowledged." The difference between this language and that of the statute of 1860, by which a *signature only* is in terms required to render a mortgage of the homestead valid, is significant, and furnishes no inconsiderable ground from which to infer that the change in the mode of waiving or conveying the home-stead right was made *ex industria*; and it is proper perhaps to add, that following on in the same direction, the Legisla-ture of 1866 have repealed the statutory provision by which a separate acknowledgment was required when a deed was executed by a married woman. No point appears to be made in behalf of the respondents as to the facts alleged in the complaint with regard to the ignorance of Mrs. Lawver respecting the contents of the mortgage. There is no allega-tion of any attempt to conceal its contents from her, or to mislead her with regard to the object or purpose of the mortgage, or of any other fraudulent practice upon her. If she signed it in ignorance of its contents, it would seem that she must attribute the consequences to her own neglect and carelessness.

The order overruling the demurrer is reversed.

McMILLAN, J.—The second section of the "homestead act," under which it is claimed the mortgage involved in this action is void, is as follows: " Such exemption shall not extend to any mortgage thereon, lawfully obtained, but such mortgage or other alienation of such land by the owner thereof, if a married man, shall not be valid without the signature of the wife to the same, unless such mortgage shall be given to secure the payment of the purchase money or some portion thereof." Comp. Stat. p. 570, Sec. 93.

I am of opinion that under this section the complaint must show affirmatively that the mortgage was not given to secure the purchase money or any part thereof. Here is an excep-

tion in the enacting clause of the statute which must be nega-
tived by the plaintiff in the first instance.   *Spiereo v. Parker,*
1 Term R. 141.   This is not done in the complaint in this case.
Upon this ground, without expressing any opinion upon the
question considered and determined by the majority of the
court, I concur in the conclusion that the order overruling the
demurrer should be reversed.