AMHERST H. WILDER *vs.* JOHN HAUGHEY & Wife.

Oct. 21, 1874.

Strict Foreclosure of Mortgage Refused.—*Held*, that the facts found in this action by the court below, and considered in the following opinion, do not make out a case in which a strict foreclosure is a just or appropriate remedy.

Homestead of Equitable Owner of Land.—An equitable owner of land may properly claim and hold the same as a homestead, under the homestead law of this state.

Appeal by defendants, from a judgment of the district court for Hennepin county, *Vanderburgh*, J., presiding, the action having been tried by the court without a jury.

*Davis, O'Brien & Wilson*, for appellants.

*Harvey Officer*, for respondent.

BERRY, J. In November, 1862, the defendant John Haughey, having purchased of the state a quarter-section of

school land, and paid fifteen per cent. of the purchase price, together with interest upon the residue to June 1, 1863, received from the commissioner of school lands the usual certificate of purchase, and immediately thereafter took possession of the land, which he has ever since held and occupied. The annual interest upon the residue of purchase money was duly paid by him for five successive years, and up to June 1, 1868, and he also paid the taxes levied upon the premises for 1863 and 1864. On June 7, 1867, he assigned his right and interest in the certificate, and the land described therein, to A. H. Wilder & Co., as security for a promissory note for $659.49, agreeing to pay the taxes levied and to be levied on the property, and also to pay to the state the annual interest upon the unpaid residue of purchase money, as the same became due. In case of his default to pay such interest and taxes, Wilder & Co. were to pay the same, and were to hold the assignment as security for such payment, as for the note. The note fell due November 1, 1867, and no part of the principal or interest of the same has been paid, save the sum of $71.00 paid January 16, 1868. On June 1, 1868, the plaintiff succeeded, by assignment, to all the rights of A. H. Wilder & Co. in the note and under the assignment. On June 9, 1868, plaintiff paid taxes on the land for 1865, 1866 and 1867, to the amount of $141.60, of which sum $130.00 was refunded by defendant in 1869. The plaintiff, on June 1, 1869, and June 1, 1871, paid the annual interest due the state on those days, being $76.16 on each. He also paid the taxes for 1868, 1870 and 1871, amounting to $90.38. No part of the sums thus paid by plaintiff has been refunded to him, except as before mentioned. The complaint states that in order to preserve his security, the plaintiff will be compelled to continue to pay the interest to accrue to the state, and taxes to be levied, until the debt secured is paid, or until foreclosure.

The pleadings admit, and it is found by the court below, that the assignment made by defendant was a mortgage, and this action is brought to foreclose the same, the plaintiff pray-

ing, in the alternative, for a strict foreclosure, or for a sale under the direction of the court. A strict foreclosure was decreed.

The first question presented is, whether this was a proper case for a strict foreclosure. Title 2, ch. 81, Gen. Stat. provides for and regulates the foreclosure of mortgages by action. Ch. 58, Laws 1870, after repealing the section of Title 2 which required a sale at public auction in all cases of foreclosure by action, adds to such title the following section, viz: "Nothing contained in this chapter shall be so construed as to prevent judgment being given for the strict foreclosure of a mortgage, in cases where such remedy is just or appropriate; but in case of strict foreclosure, no final decree of foreclosure shall be rendered until the lapse of one year after the judgment adjudging the amount due on such mortgage." When the mortgaged premises are sold under the direction of the court, six weeks' notice of sale is required to be given, and redemption is allowed for one year after the date of the confirmation of the sale. So far, then, as the mere question of time is concerned, the remedy by strict foreclosure is but little more speedy than the remedy by sale. And in addition to this consideration, when it is observed that the mortgagee may, in this state, bid at a sale, we are of opinion that the cases are very rare in which a strict foreclosure should be adjudged.

In this country, as a general rule, a sale is almost universally regarded as the just and appropriate remedy. 2 Story, Eq. Jur. § 1025 ; 2 Hilliard on Mortgages, 30–38. The statutes already cited show very clearly that it has not been the intention to depart from this general rule in this state. As applied to cases of this kind, the reasons for the rule are very clearly stated by Chancellor Jones, in *Lansing* v. *Goelet*, 9 Cowen, 346, who says, (p. 356,) "Where the estate is pledged as collateral security, merely, for the payment of the debt, a strict foreclosure would often be unjust and inequitable, disappoint the intentions of the parties, defeat the object of the security, * * * and sometimes produce

most serious injury to the mortgagor, or inconvenience and loss to the mortgagee.   *   *   *   A public sale is the truest test of the value of the estate as a resource for the payment of the demand; and to such a sale, upon sufficient notice, and under the direction of a master by whom it will be fairly conducted, neither party can justly object: it is the best mode of disposing of the property for the interest of both. If the estate is worth more than the debt, the mortgagor will have the benefit of the surplus; and if it produces, by a fair sale of it, less than the amount due upon the bond, the debtor ought to make up the deficiency.'' The opinion of the chancellor in the case cited contains a very full examination of the subject of strict foreclosure, and in addition to the passage above quoted, we refer to it generally. See also *Drew* v. *Smith*, 7 Minn. 301.

There are no facts alleged or found in the case at bar which should take it out of the general and salutary rule, and, therefore, nothing to show that a strict foreclosure is just or appropriate. It is true that the defendant has been grossly delinquent; but if this was to be a reason for decreeing a strict foreclosure, foreclosures of this kind would become the rule instead of the exception. It is also to be taken as true that the plaintiff, in order to preserve his security, will be compelled to continue to pay the annual interest to fall due to the state, as well as the taxes; but this contingency is contemplated in the instrument of assignment, in which express provision is made for the assignee's security in case of such payment. It is nowhere claimed that the plaintiff's security is not ample to cover all his claims against defendant, whether accrued or to accrue. Neither is it alleged or shown that the plaintiff will derive any substantial benefit from a strict foreclosure, which he will not derive from a sale. Indeed, as far as we can see, to decree a strict foreclosure in this case, rather than a sale, would simply be to punish the mortgagor for his delinquency, without important advantage to the plaintiff. Upon this state of facts, —and no others appear which can have any material bearing

upon the question in hand,— there is nothing to distinguish this case, as respects the matter of remedy, from the case of any ordinary mortgage to secure a promissory note. In our opinion, therefore, this was not a case in which a strict foreclosure was a just or appropriate remedy, either in reason, or within the meaning of the statute.

The only other questions necessary to be considered, arise upon the finding of the court, that at and for a long time before the assignment, and ever since, the defendant John Haughey, with his wife and co-defendant Mary Haughey, and their family, have occupied and resided upon the west eighty acre tract of the quarter-section aforesaid, as a homestead, and that said Mary did not join in the assignment made by said John to Wilder & Co., the plaintiff's assignors.

The court finds, as a conclusion of law, that John Haughey had no such title in, or ownership of, said eighty acres of land as to entitle him to hold the same as a homestead, but that he was entitled to hold as a homestead, and to remove, the dwelling-house which had been occupied by him on said eighty acre tract. In our opinion, this conclusion was wrong. Section 1, ch. 68, Gen. Stat., enacts "that a homestead, consisting of any quantity of land not exceeding eighty acres, * * * to be selected by the owner thereof, and not included in any incorporated town, city or village, or, instead thereof, at the option of the owner, a quantity of land not exceeding in amount one lot, being within an incorporated town, city or village, * * * owned and occupied by any resident of this state, shall not be subject to attachment, levy or sale, upon execution, or any other process of any court within this state." Section 2 provides that a "mortgage or other alienation of such land by the owner thereof, if a married man, shall not be valid without the signature of the wife to the same, unless such mortgage shall be given to secure the payment of the purchase money, or some portion thereof." The most important question in this case is whether, within the meaning of the statute,

John Haughey can properly be regarded as an *owner* of the eighty acres of land claimed by him as a homestead.

Haughey is not owner in fee of the eighty, not only because, on general principles, his certificate does not make him such, but because the statute expressly enacts that the fee of school lands sold shall remain in the state, until full payment thereof. Gen. Stat., ch. 38, § 12. But, "if a man has entered into a valid contract for the purchase of land, he is treated in equity as the equitable owner of the land, and the vendor is treated as the owner of the money." 1 Story, Eq. Jur. § 790 ; 1 Sugden on Vendors, (8th Am. ed.) 270, 273-4 ; *Sons of Temperance* v. *Brown*, 9 Minn. 157 ; *Seton* v. *Slade*, 7 Ves. 265 ; 3 Lead. Cas. in Eq. 54, 74. Haughey's relation to the state being that of vendee to vendor, he may properly be regarded as owner in equity, though not owner in fee, or at law. But will an equitable ownership satisfy the statute? The words, " owner " and " owned," in the Homestead Act, certainly may, *per se*, embrace an ownership in equity. Besides, by sub-div. 8, § 1, ch. 4, Gen. Stat., it is enacted that " the word, 'land,' or ' lands,' * * * shall include lands, tenements, hereditaments, and all rights thereto, and interests therein ;" so that, within this statutory definition, an owner of a right or interest in land, legal or equitable, may properly be spoken of as an owner of the land in which he possesses such right or interest. A consideration of the purpose, spirit and policy of the statute leads to the same result. These evidently are to protect from creditors, and from alienation or mortgage by a married man, without his wife's consent, certain property as a homestead, that is, as the actual or possible home or place of residence of the claimant and his family, if one he has. A statute of this beneficent character should not receive a narrow construction, but should be so construed, (if it fairly may be,) as most fully to accomplish the purposes of its enactment. Looking at the Homestead Act in this way, there is certainly no reason why an equitable ownership of land should not be protected equally

with a legal one. On the contrary, it would seem, as a general rule, that the less the estate and interest, the more important its preservation to the claimant and his family, and the greater the necessity for surrounding it with the defences of the statute. In our opinion, then, an equitable owner of land, like the defendant in this case, may properly claim and hold the same as a homestead. Similar views are expressed in *Pelan* v. *De Bevard*, 13 Iowa, 53; *Bartholomew* v. *West*, 2 Dillon, 293; *Deere* v. *Chapman*, 25 Ill. 610; *Platto* v. *Cady*, 12 Wis. 461; *McCabe* v. *Mazzuchelli*, 13 Wis. 478; *McKee* v. *Wilcox*, 11 Mich. 358.

It follows that the assignment of the certificate was ineffectual as a mortgage of the eighty acres in which the defendant claims his homestead.

Judgment reversed, and case remanded for judgment in accordance with the views herein expressed.