Godfrey vs. Thornton and others.

GODFREY vs. THORNTON and others.

HOMESTEAD: HUSBAND AND WIFE: MORTGAGE. *Effect of wife's un-attested and unacknowledged signature to mortgage of homestead.*

1. The statute which provides that no mortgage or other alienation by a married man of his homestead shall be valid without the signature of his wife to the same (R. S. 1858, ch. 134, sec. 24) does not vest any estate in the wife, living the husband, in the homestead, but operates only as a disability of the husband, living the wife, to alienate his homestead without her consent, evidenced by her signature to his alienation.

2. Where, therefore, a mortgage duly executed by the husband, of the homestead owned by him, is duly signed by the wife, but without attestation or acknowledgment of its being executed by her, it is a valid mortgage of his estate therein, though ineffectual to release her right of dower. *Hart v. Houle,* 19 Wis., 472, overruled.

3. *It seems* that, even if attestation and acknowledgment of the wife's execution were required by the statute, to render valid the husband's mortgage of his homestead, yet, under the circumstances of this case, this court would hold both husband and wife *estopped* to deny the validity of the mortgage in suit.

APPEAL from the Circuit Court for *Manitowoc* County. Foreclosure of a mortgage. The defendants *John H. Thornton* and *Ellen Thornton,* his wife, and *Thomas Windiate* and *Cornelia Windiate,* his wife, answered that the premises covered by the mortgage were at the time the instrument was made, and still were, the homestead of said *John H.* and *Ellen Thornton,* the alleged mortgagors; that the persons who subscribed the mortgage as witnesses were not present at the signing of the mortgage by the alleged mortgagors; that they never signed as witnesses at the request of said *Ellen Thornton,* and she never knew that they signed as such witnesses; and that said *Ellen Thornton* never acknowledged the execution of said mortgage by her, before any officer entitled to take such acknowledgment. The answer of *John H. Thornton* further alleged, that in October, 1875 (subsequent to the execution of the mortgage), he was adjudicated

a bankrupt in the proper federal court; that the name of the present plaintiff was duly inserted in the list of creditors in said bankruptcy proceeding, and his claim under the note and mortgage here in suit was duly scheduled, and he was duly notified of the proceeding; and that in January, 1876, said *John H. Thornton* perfected a composition with all his creditors under the then existing bankrupt laws of the United States, which was ratified by decree of the court, and the said *Thornton* released from such proceedings and discharged from all his debts and obligations, and his property restored to him subject only to liens existing thereon at the time of the filing of the petition in bankruptcy. It appears also from the pleadings, that, at a date subsequent to that of the mortgage in suit, *Thomas Windiate* took a quit-claim deed of the premises from *John H.* and *Ellen Thornton*, and executed to them at the same time a contract to reconvey on payment of certain sums there named.

The findings of the court were in accordance with the answers as above stated; and judgment was rendered thereupon in favor of the defendants, declaring the mortgage void, and dismissing the complaint. Plaintiff appealed from the judgment.

For the appellant, there was a brief by *H. G. & W. J. Turner*, and oral argument by *Wm. F. Vilas*. They contended, among other things, 1. That the statute (sec. 52, ch. 49, R. S. 1849; sec. 24, ch. 134, R. S. 1858) required only the *signature* of the wife, and not attestation or acknowledgment thereof, to give validity to a mortgage of the homestead. This is the view taken in all the cases in this court except one. *Phelps v. Rooney*, 9 Wis., 70; *Platto v. Cady*, 12 id., 461; *Green v. Lyndes*, id., 404; *McCabe v. Mazzuchelli*, 13 id., 478; *Spencer v. Fredendall*, 15 id., 666; *Riehl v. Bingenheimer*, 28 id., 87; *Barker v. Dayton*, id., 367; *West v. Ward*, 26 id., 579. In *Hait v. Houle*, 19 Wis., 472, the evidence showed that Mrs. Houle did not sign the mortgage, or that her signature was

obtained by fraud. The chief justice discusses the evidence at some length, and comes to the conclusion that Mrs. Houle did not acknowledge the mortgage, and that therefore it was wholly inoperative as to her. It seems to have been unnecessary to pass upon her failure to acknowledge the instrument, since it appears that she did not execute it. Under a similar statute in Minnesota, it is held that the *signature* of the wife is sufficient. *Lawver v. Slingerland*, 11 Minn., 447. Moreover, in this state, the witnessing and acknowledging of a conveyance are necessary only for the purpose of entitling it to record; and the statute provides for either *proof* or acknowledgment in the case of a married woman joining with her husband in the conveyance of her property, as well as in other cases. R. S. 1858, ch. 86, secs. 1, 12, 17 et seq.; *McPherson v. Featherstone*, 37 Wis., 632; *Gilbert v. Jess*, 31 id., 110; *McMahon v. McGraw*, 26 id., 614; *Quinney v. Denney*, 18 id., 486; *Myrick v. McMillan*, 13 id., 188. 2. That the bankruptcy proceedings did not operate as a satisfaction of the indebtedness secured by the mortgage. Plaintiff's claim was scheduled by the bankrupt as a *secured* claim; it is not suggested in any of the bankruptcy proceedings that plaintiff took any part therein, proved his claim, or even had notice of the proceedings; his name is not among the names of those who accepted the compromise; the order ratifying the compromise restores to the bankrupt his property, *subject to all liens* existing thereon at the time of filing his petition; and the premises in suit, as the bankrupt's homestead, were not affected by the proceedings. After the institution of those proceedings, plaintiff had three remedies: he might rely upon the security; he might abandon it, and prove his whole debt; he might be admitted as a creditor only for the balance remaining after deducting the value of the security. Bump on Bankruptcy, 8th ed., 615–17. His claim was not due at the time of the filing of the petition, and he elected to rely upon the security.

For the respondent, there was a brief by *Nash & Schmitz*,

and oral argument by *S. U. Pinney*. They contended that the absence of attestation or acknowledgment of the wife's signature rendered the mortgage void. While at common law a deed was not invalid for lack of attestation, and while, under the Territorial Statutes of 1839, which merely provided that a deed attested and acknowledged should "be good," etc., neither attestation nor acknowledgment was held necessary to the *validity* of the deed (13 Wis., 188; 18 id., 485; 26 id., 614; 31 id., 10), yet these decisions related solely to that statute. *Mc-Pherson v. Featherstone*, 37 Wis., 632. Sec. 8, ch. 86, R. S. 1858, however, provided that "deeds executed within this state, of lands or any interest in lands therein, *shall* be executed in the presence of two witnesses, who *shall* subscribe their names to the same as such," etc. This statute (which has been ever since in force, and is substantially embodied in sec. 2216, R. S. 1878) is peremptory and mandatory; and its object is to prescribe a safer mode of conveying land than those previously in use. *Dœrflinger v. Hilmantel*, 21 Wis., 566; *Wendel v. Durbin*, 26 id., 390; *District Township v. Du-buque*, 7 Iowa, 284; *Webster v. French*, 12 Ill., 302; *McCune v. Weller*, 11 Cal., 54; *Dryfus v. Bridges*, 45 Miss., 247; *Norwegian Street*, 81 Pa. St., 349; Hob., 298; Sid., 56; Stra., 1125; 2 Term, 395; *Rex v. Loxdale*, 1 Burr., 447. The effect of the wife's failure to acknowledge a mortgage of the homestead is expressly adjudicated in *Martin v. Dwelly*, 6 Wend., 9, and *Carr v. Williams*, 10 Ohio, 305; and also in this state in *Hait v. Houle*, 19 Wis., 472. The defense in the last named case was fraud and undue influence in procuring the wife's signature to the mortgage, as well as the fact that she never acknowledged it. Although the question of fraud and undue influence was ably and eloquently presented to the court by the wife's counsel, the court chose rather to reverse the judgment on the ground that the mortgage was not acknowledged by her. That decision has stood unquestioned for fourteen years. The extent of the wife's rights in respect to the home-

stead was then comparatively a new subject, and this court was at liberty to place such a construction upon the statute (which was a remedial one) as sound policy dictated, or as appeared most likely to effect the beneficent object of the law. After the law has been thus expressly determined, and has remained settled so long, the decision ought not to be disturbed. Ram on Leg. Judg., 200–212. The rule then adopted is clearly calculated to protect the wife in the enjoyment of her homestead, and preserve her against any but a voluntary alienation. The safeguards of attesting witnesses and a public acknowledgment are requisite to secure her from violence, undue influence, and deception. It would be difficult to suggest reasons of equal importance for now changing the construction of the statute. *Eyster v. Hatheway*, 50 Ill., 521; *Armstrong v. Ross*, 20 N. J. Eq., 109; *Ford v. Teal*, 7 Bush, 156; *Fisher v. Meister*, 24 Mich., 447; *Laird v. Scott*, 5 Heisk., 314. It has long been the law of this state that when a married woman joins in her husband's deed in order to bar her right of dower, her execution of it must be duly acknowledged (sec. 13, ch. 86, R. S. 1858); but with the vast majority of people the homestead is the entire real estate of the family, and it can hardly be seriously argued that the legislature has taken greater care of dower than of homestead rights. The wife's homestead rights are similar in kind to her dower rights, but are greater in degree and more valuable, because they are present and actual instead of future and contingent. Statutes concerning alienation of homesteads and those relating to the barring of dower, being *in pari materia*, should receive a similar construction. The question here is entirely apart from the question what would be a sufficient deed if the wife were conveying her separate property. *Fisher v. Meister*, 24 Mich., 447. A decisive consideration in this case seems to be, that the statute requiring the wife's signature to an instrument for the alienation of a homestead, after it had been construed in *Hait v. Houle*, was substantially reënacted

in sec. 2203, R. S. 1878. This was a legislative approval and adoption of that construction. *Ex parte Matthews*, 52 Ala., 51; *O'Byrnes v. The State*, 51 id., 25; *Cota v. Ross*, 66 Me., 161. In fact, when the revisers of 1878 reported to the legislature sec. 2203, they appended thereto as an explanatory note a reference to *Hait v. Houle* — a clear proof that the legislature approved and adopted the doctrine of that case in adopting the statute concerning which it was pronounced.

RYAN, C. J. Unlike the case of *Hait v. Houle*, 19 Wis., 472, there is here no doubt of the wife's voluntary signature to the mortgage; no question of deceit in procuring it. The wife here frankly testifies that she signed, and knew she was signing, a mortgage of the homestead; that no deception was practiced to secure her signature; and that she supposed she was executing and acknowledging it as the law requires. But it appears that she did not sign the mortgage in the presence of the attesting witnesses, and did not acknowledge it.

There is here no question of the release of the wife's dower in the mortgaged premises. It is conceded that the mortgage is not so executed by the wife as to release it. The only question is, whether the signature of the wife to the mortgage, as made, operates to give validity to her husband's mortgage of his estate in the homestead.

The statute provides, that no mortgage or other alienation by a married man of his homestead shall be valid without the signature of his wife to the same. And the radical question in the case is, whether this provision operates to vest any estate in the wife, living the husband, in his homestead; or whether it operates only as a disability of the husband, living the wife, to alienate his homestead without her consent, evidenced by her signature to his alienation.

The latter certainly appears to be the plain construction of the provision, and is expressly given to it in *Platto v. Cady*, 12 Wis., 461; almost equally so in *McCabe v. Mazzuchelli*,

Godfrey vs. Thornton and others.

13 Wis., 478; *Spencer v. Fredendall*, 15 Wis., 666; *Myers v. Ford*, 22 Wis., 139; *West v. Ward*, 26 Wis., 579, and perhaps in *Riehl v. Bingenheimer*, 28 Wis., 84.

The law has not hitherto undertaken to prohibit a husband to change his domicile without his wife's consent, or to release the wife from her reasonable duty to accompany her husband upon his change of domicile. *Gleason v. Gleason*, 4 Wis., 64. Upon such change, the husband's former place of residence ceases to be a homestead, and he may mortgage or convey it without his wife's signature, subject to her inchoate right of dower. The husband cannot, by his own act, divest his wife's right of dower, because it is an estate. But he can, by his own act, free himself from his disability to mortgage or convey his homestead without the signature of his wife, because his disability vests no estate in her. And this is the plainer, because the husband, abandoning his homestead and so freeing himself from his disability to alienate it, has no duty imposed upon him to acquire another to which the disability would attach. The statute authorizes the husband to insure the dwelling house, the home on which the right of homestead rests; and, upon loss by fire, alone to receive the amount of the insurance, without imposing upon him any duty to repair or rebuild, as absolutely as he may receive the amount of insurance on his other property, in which his wife has no other interest except her dower. Upon the death of the husband intestate, without children, the statute provides that the homestead shall descend in fee to his widow; upon his death intestate, leaving children, to his widow during widowhood only. But it expressly authorizes the husband to devise the homestead free from all right of the wife in it as a homestead. And it has a still more important bearing on the question, that, when the husband is seized of the homestead, the statute throughout deals with him as the owner. Whether husband or wife be seized of the homestead, the statute does not disturb or affect the legal title. If the wife

be seized, she may alienate it at her pleasure.   If the husband be seized, he cannot alienate it without the wife's consent, but his title is otherwise unchanged.   The court has nothing to do with the wisdom or justice of the statute.   Its only duty is to give it construction as it is written.

And so it is quite apparent that the statutory disability of the husband goes only to give a personal control over him to his wife in his alienation of his homestead.   The statute operates only by way of retort on the husband, for some of the disabilities of the wife at the common law.   This view is implied in the cases already cited, and is expressly affirmed in *Hoyt v. Howe*, 3 Wis., 752; *Green v. Lyndes*, 12 Wis., 404; *Read v. Sang*, 21 Wis., 678.

This construction of the statute was not intended to be disturbed, and is not disturbed, by the late case of *Weston v. Weston, ante*, p. 130.   That was a very peculiar case.   The possession of the homestead had been assigned to the wife by way of provision for her, pending her action for divorce against her husband.   A proceeding had been instituted by the father and brother of her husband to enforce a mechanic's lien against the homestead, with some appearance of collusion to defeat the wife's possessory right.   And this court held that she was entitled to be admitted as a party to defend.   The judgment went mainly on her inchoate right of dower; but her possessory right under the order in the divorce suit had undoubtedly a proper influence upon it.   The opinion, indeed, contains some unguarded expressions, which might be construed as throwing some doubt upon the position here held.   But the court did not consider or pass upon any right of the wife founded on the disability of the husband.

Upon a careful examination of the cases in this court, very few *dicta* have been found implying doubt of the view now taken.   In *Kent v. Agard*, 22 Wis., 150, speaking of title derived under a mortgage of husband and wife, the late Mr. Justice PAINE says that it was title to the homestead right of

the husband and wife, which did not pass by a prior deed for want of the wife's signature. The expression is, in effect, perhaps accurate enough, because it includes the wife's right of dower. So in *Anderson v. Coburn*, 27 Wis., 558, and again in *Wochoska v. Wochoska*, 45 Wis., 427, the homestead is called the homestead of the husband and wife. So in *Campbell v. Babcock*, 27 Wis., 512, a case turning on the right of the wife to set up usury against a mortgage of the homestead formally executed by both husband and wife, it is said by Mr. Justice LYON that, unless the wife joins in the execution of a valid conveyance or mortgage of the homestead, her homestead rights are not affected. This was obviously said in view of the fact that the mortgage in that case was duly executed and acknowledged by the wife, releasing her right of dower. So in *Hanson v. Edgar*, 34 Wis., 653, where the mortgage was executed by the husband alone, without any signature of consent by the wife, Mr. Justice COLE remarks that the mortgage was not signed by the wife, and was invalid because the wife did not join in it. This *dictum* looks both ways, clearly showing that the question was not in the mind of the learned judge. But these, and perhaps like loose phrases elsewhere, are not used in reference to the question before the court; are mere inaccuracies of expression, *obiter dicta*, and are of no weight in determining the question.

The husband, therefore, being the owner, living the wife, is seized of the homestead in fee, as of his other realty; and is placed, by the provision in question, under a mere personal disability to alienate his homestead without the signature of his wife as an evidence of her consent. See *Gee v. Moore*, 14 Cal., 472; *Bowman v. Norton*, 16 Cal., 213; *Himmelmann v. Schmidt*, 23 Cal., 117; *Stewart v. Mackey*, 16 Texas, 56.

This view goes far to simplify the precise question, and to account for the peculiar language of the provision in question.

Whenever the wife joins with her husband in a mortgage or conveyance of realty of which both are seized, or to release

her dower in realty of which he is seized, whenever the wife executes a mortgage or conveyance to pass her separate estate, she is required to execute and acknowledge the deed, according to the general provisions relating to all grantors, so as to admit it to registry. In the provision under consideration, the mortgage or alienation is that of the husband, which shall not be valid without the signature of the wife to the same. It would be a violation of all judicial rules of construction, to overlook this contrast of language, going to the substance of the thing to be done, or to confound one provision with the other. It is apparent that the legislature has not done so, although it appears that this court once did. The one provision clearly relates to conveyances by a wife, which she must execute, whether the husband join in the deed or not; and the other to mortgages or conveyances by the husband, in which the wife does not join, but which the husband cannot execute without her written assent. In the one case, the wife passes her own estate, actual or inchoate; in the other, she passes no estate, but simply assents to her husband's passing his. The one is a conveyance by the wife; the other is the wife's signature to relieve the husband from disability to convey his own estate. The statute requires the wife's conveyance to be witnessed and acknowledged so that it may be recorded; but requires the wife's consent to her husband's conveyance of his own estate, to be evidenced only by her signature. If the statute had intended the wife to join in the mortgage or alienation of the homestead, presumably it would have said so; if it had intended the signature of the wife, which it requires, to be witnessed and acknowledged, presumably it would have said so; then all the formalities necessary to entitle a conveyance to record should have been complied with. But the statute does not say so, and the court cannot do violence to the language which it uses, and torture the mere signature of the wife, by way of assent, into joining in the conveyance and formally executing and acknowledging it or the signature by

which she assents to her husband's alienation of his own estate. The different provisions are substantially embodied in sec. 2203 of the present revision; and the contrast in the language, the contrast of the thing prescribed, cannot fail to strike the most casual reader.

The court is very strongly confirmed in these views by the case of *Wynn v. Ficklen*, 54 Ga., 529. The statute before the court in that case, providing for conveying realty by way of security, simply required the wife's consent; did not require her to join in the conveyance, or prescribe any form in which her consent was to be given. The conveyance before the court was absolute on its face, but was shown to have been given by way of security, and was not executed by the wife; but appended to the deed was a written consent, signed by the wife, witnessed by her husband only, and not acknowledged. The consent was held to be sufficient to give validity to the deed.

The language of the statute in Minnesota is substantially identical with the provision under consideration. And therefore the case of *Lawver v. Slingerland*, 11 Minn., 447, is perhaps still more satisfactory. The court says: "The *signature* alone of the wife is required. The mortgage spoken of is, 'a mortgage by the *owner*, if a married man,' not a mortgage by the *owner and his wife*. The signature is required in token of her assent to a mortgage by the *owner*, her husband, not for the purpose of making her a party to the mortgage in the same sense in which her husband is a party. It is objected, that to hold that the signature is sufficient, without attestation or separate acknowledgment, is to introduce an anomaly into our law relating to the conveyance of real property or interests therein by married women. It was in the power of the legislature to fortify the homestead by whatever safeguards were deemed necessary. If, in the exercise of legislative discretion, it was deemed only necessary to provide that the homestead should not be mortgaged without the *signature* of the wife, no consideration of public policy can authorize us in

putting such construction upon the law as will render the attestation of the signature, or an acknowledgment by the wife, indispensable, however imperfect in our opinion may be the protection which any other construction would throw around the homestead."

The court was referred to several cases turning upon defective execution of conveyances by married women. In the view here taken of the statute, these cases can give no light on the question. The statute of Tennessee expressly requires the wife to join in the conveyance of the homestead. And the learned and able Chancellor COOPER, of that state, cites a *dictum* of C. J. NICHOLSON, in a case apparently not yet reported, that the wife has a right in the land, connected with the right of possession; and adds for himself, that such a right, if not an estate in an absolute sense, is one for all practical purposes. *Hoge v. Hollister*, 2 Tenn. Ch., 606. This court would hesitate to hold so under such a statute as that of Tennessee, and certainly cannot hold so under the statute of this state. The only case in another state to which the court was referred, in conflict with the view here taken of the wife's signature, is *Fisher v. Meister*, 24 Mich., 447. This court entertains profound deference for the judgments of that. But the question under consideration, though passed upon in that case, does not appear to have been considered. The court contents itself with quoting the statute providing for the signature of the wife, and adding, " this plainly requires her to be a party to the conveyance." There is no discussion, no authority cited. This case, like *Hait v. Houle, supra*, appears very much like begging the question.

There is no doubt that the views of the provision here taken must be held to overrule *Hait v. Houle*. That was a case of gross fraud and imposition on the wife, and the judgment is undoubtedly right. The evidence showed, in effect, that the wife did not in any proper sense sign the mortgage. Her signature was a fact quite as much disproved as her acknowledg-

Godfrey vs. Thornton and others.

ment. And the entry in Mr. Justice COLE's calendar is, that the judgment was reversed because the mortgage was not signed and acknowledged by the wife. Taking that for the ground of the judgment, the acknowledgment was mere redundancy. But the late distinguished chief justice, whose opinions are so generally accurate, puts the judgment upon the failure of the wife to acknowledge the mortgage, and reaches *per saltum* the conclusion that acknowledgment is essential. This is his language: "The mortgage, not having been acknowledged by Mrs. Houle, is inoperative against her. A deed defectively executed, or not acknowledged, may be enforced as against the husband, or other person not under disability, as an agreement to convey. But as against a married woman, a deed not acknowledged by her, or otherwise defective, will not be enforced even in equity. *Martin v. Dwelly*, 6 Wend., 9; *Carr v. Williams*, 10 Ohio, 305. As to Mrs. Houle, therefore, the mortgage is wholly inoperative. It does not convey her interest in any of the land. And as it is declared by statute that a mortgage of the homestead shall not be valid without the signature of the wife, it seems to follow, as to the forty acres comprising the homestead, that the mortgage cannot be enforced against either of the mortgagors."

It seems to have been overlooked that the disability, so far as the fee was concerned, was the disability of the husband, and not of the wife. And it is quite apparent that this great jurist overlooked the difficulty, or he would have dealt with it, one way or the other, in his habitual thorough and masterly style of discussion. It was not his habit to dispose of grave questions in so curt and arbitrary a manner. And, indeed, his disposition of the question under discussion is rather to be inferred from what he says than said; assumed rather than established.

The learned counsel of the respondents reviewed, with great learning and ability, the history of the law enabling married women to convey, and of the solemnities of acknowledgment

required from time to time of their deeds, with a view of showing that the signature of the wife, required by the statute, was within the policy of the law covering all alienations by married women. His argument was interesting and instructive, and would have had great weight with the court, but for the fact that the statute gives the wife no estate by the disability imposed on the husband, but only a' personal control over him in the alienation of his own estate.

If this were all otherwise, this court would not hesitate to follow the supreme court of Michigan in *Norton v. Nichols*, 35 Mich., 148, and hold both husband and wife estopped from impeaching the mortgage.

"This bill does not show that the mortgage was executed by Mrs. Norton unwillingly, or under any compulsion or influence, nor that she would not and did not acknowledge it freely. The whole ground for assailing the mortgage, which was in all respects fair and voluntarily made, for a good and valuable consideration, is the technical claim that the acknowledgment should not have been taken in the husband's presence.

"Mrs. Norton knew the purpose of the mortgage, and that the mortgagee relied on it as valid, and that it was valid on its face. Instead of attempting to repudiate it and give timely information to Mr. Nichols that the mortgage was not what she had done her best to make it appear, she gave no information, and allowed her husband to reap all the benefits of the loan, only objecting when steps were taken to enforce it.

"Whatever may be the rule concerning the formalities needed to bind married women, there is no doubt that they may be estopped by their deliberate conduct as well as any one else. The cases of *Sharpe v. Foy*, 4 Ch. Ap. (Law. Rep.), 35, and *In re Lush's Trusts*, 4 Ch. Ap. (Law Rep.), 591, are analogous and in point. And the circumstances of this case show that the defendant would be grossly defrauded by the complainant's course, if this mortgage is allowed to be set aside. There is no equity whatever in the bill, which on its face is an

attempt, without any merit, to evade an honest claim which could never have been created unless the complainants had both done what they could to create confidence in it.

"If a court can ever set aside a conveyance for a mere omission, which is made out by contradicting an official act, where there has been no fault in the claimant—a point which we have no occasion to discuss,—it certainly will not do so when the party complaining has not only consented to the act, but has never taken any course to repudiate it, or to save the grantee from the effects of confidence in its validity."

Every essential word of this opinion applies with equal force to the present case.

It is not out of place to remark here that the solemnity of acknowledgment has largely degenerated into farce, as appears in *Hait v. Houle*, in this case, in *Norton v. Nichols*, and in many others. It too often appears that officers authorized to take acknowledgment of deeds, pay little heed to their duty, and give false certificates of acknowledgment.

The question is suggested in the briefs of counsel, that the mortgage security was affected in the proceedings in the bankruptcy of the mortgagor. The record discloses nothing done by the mortgagee to relinquish or affect the lien of his mortgage. Indeed, counsel appear to have had little faith in the suggestion.

A graver question may arise from the bankruptcy, upon the judgment of foreclosure, whether judgment for deficiency can go against the bankrupt. That question was not argued, is not necessary to this judgment, and will not be considered. If it should arise in the further progress of the cause, it may be brought here and argued on a subsequent appeal.

The court gladly acknowledges the very marked ability with which this appeal was argued by the distinguished counsel on both sides.

*By the Court.*—The judgment is reversed, and the cause

remanded to the court below with directions to enter a judgment foreclosing the mortgage.

TAYLOR, J., took no part.