MYRICK, Respondent, v. BILL et al., Appellants.

1. **Homesteads—What Right Gives the Interest.**
   Under the homestead law of Dakota, a person in possession of land with an agreement to purchase has an interest in the land to which a homestead right will attach against every one except the owner of the soil.

2. **Contract—To Purchase, What Constitutes.**
   Where M., in possession of land, upon which he had made valuable improvements, writes the owner that he is desirous of purchasing the land, asking the price, and, receiving an answer, replies that the price is satisfactory; that he would forward the money; and asks when the deed would be ready,—*held*, an agreement to purchase.

3. **Homestead—Joinder of Wife in Conveyance—Pol. C. c. 38, § 3.**
   Where the husband alone executed a bill of sale of two buildings,—a dwelling-house that he and his wife used as their home, and a store that he used, in connection with the dwelling, in the prosecution of his ordinary business,—both situated upon a lot, of which he had an agreement to purchase, consisting of less than one acre, *held*, the buildings were a homestead, and under Pol. C. c. 38, § 3, the wife not having concurred in, or signed the bill of sale, it vested no title in the purchaser, and he could not recover in an action of claim and delivery against her.

   FRANCIS, J., dissenting.

(Argued May 19, 1887; reversed May 26; opinion filed February 24, 1888.)

Appeal from the district court of Stutsman county; Hon. W. H. FRANCIS, Judge.

*Dodge & Camp*, for appellants.

Was there a right of homestead in these buildings and the land on which they stood on October 19, 1878, so that the sig-

nature of Miller's wife, or her concurrence in the bill of sale, was necessary to its validity?

The homestead law is construed liberally for the family, and strictly against the creditor and purchaser.  Thompson, Homesteads, 3; *Whittle* v. *Saunders*, 54 Ga. 548, 65 Amer. Dec. 484.

These premises, with the buildings in controversy, occupied by Miller and his family as their home, held under a valid contract of purchase and sale, did constitute the homestead of the Miller family, and could not be conveyed without the joint consent of both the husband and wife.  Pol. C. c. 38, § 3; *Canfield* v. *Hard*, 2 Atl. Rep. 136; *Binzel* v. *Grogan*, 29 N. W. Rep. 895; *Clay* v. *Richardson*, 13 N. W. Rep. 644; *Moore* v. *Reaves*, 15 Kan. 150; *Wilder* v. *Haughey*, 21 Minn. 101; cases cited in 65 Amer. Dec. 487; *Thimes* v. *Stumpff*, 5 Pac. Rep. 431; *Hogan* v. *Manners*, 33 Amer. Rep. 199.

The less the estate, the greater the importance of protecting it.  *Wilder* v. *Haughey*, 21 Minn. 101; *Pelan* v. *De Bevard*, 13 Ia. 53.

One who occupies land under a contract of purchase, as Miller did, has an estate in the land sufficient to maintain the claim of homestead.  *Moore* v. *Reaves*, 15 Kan. 150; *McCabe* v. *Mazzuchelli*, 13 Wis. 478; *Wilder* v. *Haughey, supra; Fyffe* v. *Beers*, 18 Ia. 4; *Hewitt* v. *Rankin*, 41 Ia. 35; *Green* v. *Farrar*, 5 N. W. Rep. 557; Thompson, Homesteads, 170; *Pryor* v. *Stone*, 70 Amer. Dec. 341, n; *Canfield* v. *Hard, supra; Frisby* v. *Whitney*, 9 Wall. 187.

*White & Hewit*, for respondent.

On this homestead question in this case the law has been stated by this court already.  *Myrick* v. *Bill*, 17 N. W. Rep. 268.

This case holds, substantially, that a naked possession of the land will not be sufficient as a basis to support the claim of homestead; there must be some estate in the land, or there can be no homestead right in the building.

The parties in possession of these buildings had occupied them as trespassers on the lot in question until the fall of 1878, when

they corresponded with the agents of the owners, asking to purchase the lot; but there was no accepted contract for a conveyance until long after the bill of sale.

SPENCER, J. This was an action of claim and delivery to recover two frame buildings used as a dwelling and store, and claimed by the plaintiff to be his property by virtue of a certain bill of sale alleged to have been executed to him October 19, 1878, by one Harvey C. Miller, the then owner. The defendants deny that plaintiff is the owner, or entitled to the possession, of said buildings, and allege that at the time of the execution of said bill of sale said defendant Rose A. Bill was the wife of said Harvey C. Miller; that said buildings, and the land on which they stood, was the homestead of said defendant and her family at such time; and that she neither signed nor consented to, nor had knowledge of the execution of, such bill of sale. After the close of the evidence upon the trial, certain questions of fact were submitted to the jury, which, with their answers, so far as they are material to the question we propose to consider, are as follows: "*First.* When was the bill of sale in question executed? *Answer.* October 20, 1878. *Second.* Did the defendant Rose A. Bill and her then husband occupy the dwelling in controversy as their home from the spring of 1878 to the spring of 1879? *A.* They did. *Third.* Was the store in controversy used, during the time from the spring of 1878 to the spring of 1879, in direct connection with said dwelling-house, in the prosecution of said Miller's ordinary business? *A.* It was. *Fourth.* Has the defendant Rose A. Bill occupied said premises as her home since the spring of 1879? *A.* She has. *Fifth.* Did said Harvey C. Miller have the correspondence with a representative of the land department of the Northern Pacific R. R. Co., testified to by Mr. Bill in this case? *A.* Yes, he had."

(From this correspondence it appears that in the latter part of September, or early in October, 1878, and before the execution of the bill of sale in controversy, said Miller wrote the agents or commissioners of the land department of the North-

ern Pacific Railroad Company in regard to purchasing lot 1, in block No. 24, upon which the buildings in controversy were located. He received a reply that the lot could be had for $25. Miller then wrote that he was anxious to obtain the two lots, and would forward the money at any time, and desired to know when they would forward the deed. That the persons repre-· senting the railroad company then wrote, assuring him that he· could have the lot at that price, and that they would send a. man up in a short time to settle for the purchase.)

In the course of the trial, it was admitted by the counsel for· the respective parties in open court, and entered in the minutes,. "that lots one and two in block twenty-four, being the land upon· which said buildings stood, as described in the pleadings, were contiguous lots, and did not exceed one acre in extent, and were within the town plat of the original town of Jamestown, D. T.; that the defendant Rose A. Bill did not sign or consent to the· bill of sale in question; that the title to said land was in the· Northern Pacific Railroad Company until May 14, 1879, and. that said company conveyed said land to Harvey C. Miller by· a good and sufficient deed of conveyance on the day last afore- said; and that both buildings in controversy were situated on lot one in block twenty-four of the original town of Jamestown; and that the defendant Rose A. Bill was in the year 1877, and from that time until May, 1879, the lawful wife of said Har- yey C. Miller."

Without stopping to consider the question whether, under the homestead laws of this territory, anything more than actual possession and occupation of the land on which the house is lo- cated is necessary, in order to give such occupant a homestead interest therein, as against everybody except the owner of the. soil, and assuming that some interest in the soil itself, in addi- tion to such possession, is essential to put the occupant in po- sition to maintain a homestead right, still the admitted facts. in this case, and those found by the special verdict of the jury, are ample to satisfy any demands of the law in that regard, and demonstrate conclusively that the defendant Rose A. Bill and.

her husband, at the time of the execution of the bill of sale in question, did have a homestead interest in the lands on which the buildings in controversy were located.   It has been repeatedly held, and is well settled, that a person in possession of lands under a contract for their purchase has an interest in the land to which a homestead right will attach.   *Moore* v. *Reaves*, 15 Kan. 150; *McCabe* v. *Mazzuchelli*, 13 Wis. 478; *Wilder* v. *Haughey*, 21 Minn. 101; *Hewitt* v. *Rankin*, 41 Iowa, 35.

The jury, by their special finding that Miller had the correspondence testified to by the witness Bill, have, in substance, found as facts that Miller made a bargain with the railroad company for the sale of lot 1 in block 24 to himself at an agreed price.   That is to say, they found that Miller wrote to the owner of the land, or person having charge of its sale, informing him that he desired to purchase it, and requested to be informed at what price it might be obtained; that he received an answer stating the price at which he could purchase it, whereupon he wrote him that the price was satisfactory, that he would forward the money at any time, and asking when the deed would be ready.   He at this time was in actual possession of these lands, and had made valuable improvements thereon.   Can there be any doubt that these facts constitute, in law, an agreement between these parties for the sale and purchase of the lots in question?   We think not.   The parties to it treated it as a valid agreement, and it was afterwards consummated by the payment of the price stipulated, and the conveyance of the property to Miller.   The law of this territory in regard to homesteads provides that the homestead must embrace the house used as a home by the owner thereof, (section 6, c. 38, Pol. Code;) that it may contain one or more lots, with the buildings thereon, (section 7,) if within a town plat not exceeding one acre in extent, (section 8.)   It must not embrace more than one dwelling;   *   *   *   but a shop, store, or other building situated thereon, and really used or occupied by the owner in the prosecution of ordinary business, may be appurtenant to such homestead.   Section 9.

Applying this law to the facts in this case, we conclude that the buildings in controversy did constitute and were a homestead of said Miller and his family at the time of the execution of the bill of sale under which plaintiff claims to recover them.

It is further provided by section 3 of said homestead law that any conveyance or incumbrance by the owner of such homestead shall be of no validity unless the husband and wife, if the owner is married, and both are residents of the territory, concur in and sign the same. Miller was the owner in the sense in which that term is used in this statute, and the defendant Rose A. Bill was his wife at the time the bill of sale was executed; and they both occupied the dwelling on this lot as a residence. She did not concur in or sign the bill of sale, and consequently it vested no right or title to the buildings in controversy in the plaintiff.

We do not consider any of the other questions presented on this appeal. The conclusions of law made by the court below, and on which judgment was entered, were, for the reasons stated, erroneous, and such judgment must therefore be reversed.

All concur, except FRANCIS, J., dissenting.