# CASES DETERMINED

---

Town, Appellant, vs. Gensch and others, Respondents.

*October 12, 1898 — January 10, 1899.*

*Conveyance of homestead without wife's signature: Reservation of homestead rights: Deeds: Recitals: Notice.*

| 101 | 445 |
|---|---|
| 113 | ¹277 |
| 101 | 445 |
| 115 | ¹281 |

1. The provision of sec. 2203, R. S. 1878, making void a conveyance of a homestead by a married man without the signature of his wife, operates as a disability imposed on the husband in favor of the wife, but does not vest in her an estate in the land.

2. A deed of his homestead by the husband alone which contains no reservation of an absolute life estate in the husband and wife will not be held a valid conveyance of the reversion after the termination of the homestead rights. If to a clause containing such a reservation there is joined an agreement which invades and circumscribes the use, such as that the grantee shall have a home in the dwelling and the use of the land in common with the grantor and under his direction and control, the deed will be absolutely void.

3. Where a recorded conveyance contained recitals distinctly describing and referring to a written agreement between the same parties affecting their rights in the premises, a purchaser from the grantee was chargeable with notice of the contents of such agreement, even though it was not recorded until after the recording of the deed to such purchaser.

APPEAL from a judgment of the circuit court for Fond du Lac county: N. S. GILSON, Circuit Judge. *Reversed.*

This is an action of ejectment to recover forty acres of farm land. The land for many years was the homestead of

one George Wells, who died intestate April 7, 1895. He also owned some adjoining lands, which, together with the forty acres in suit, constituted his farm. The plaintiff was his only child and heir at law. In March, 1891, Wells, being then an aged man, lived on the farm and occupied the forty acres in question with his wife as a homestead; and one Rockwell S. Jenkins, son of Mrs. Wells, and stepson of George Wells, lived with them. On the 28th of March, 1891, Wells made and delivered to Jenkins a warranty deed of the farm, including the homestead, which deed was not signed by Mrs. Wells, and contained the following stipulations and reservations: "For and in consideration of the faithful performance of the promises and conditions set out in a certain agreement for the support of the grantor and his wife for the remainder of their or either of their natural lives, made and executed in writing by said second party (Rockwell S. Jenkins), and of even date herewith, and, of ten dollars to him in hand paid by said party of the second part, the receipt whereof is hereby confessed and acknowledged, has given, granted, bargained, sold, etc., the following described real estate. And being further subject to the reservation of the use for life to said grantor and his wife, and to the survivor of them, of even date herewith, executed by said second party to said grantor and his wfie. And this indenture shall convey to said party of the second part all of the personal property that shall be owned by said party of the first part at the time of his death."

At the same time that the deed was executed an agreement was also executed and acknowledged by Wells and Jenkins as a part of the same transaction, which contained the following stipulations: "In consideration of the true and faithful performance of the promises and agreements made and hereinafter set out by said party of the second part, the party of the first part (Wells) does hereby promise and agree to convey by deed to said second party (Jenkins)

the following described real estate, situate in the town of Waupun," etc. (The description of land in such contract being the same as in the deed, including the land described in the complaint.) " All subject, however, to a certain mortgage for the sum of $1,500, which said second party assumes and agrees to pay as a part of the consideration of such conveyance; and being further subject to the reservation of the use and control of said real estate for the natural life of said party of the first part, and of his wife, Betsey Wells, in case she shall survive him, so long as either of them shall live; and also subject to the further provisions and agreements hereinafter set out." And also stipulating as follows: " In consideration of said conveyance by deed of said real estate, the execution and delivery whereof is hereby confessed and acknowledged, the said party of the second part hereby promises and agrees to pay the mortgage and mortgage debt hereinbefore referred to; to allow and permit the said first party and his wife, Betsey, the free use and control of said real estate and of all the personal property thereon, so long as they, or either of them, shall live; to properly work and care for said real estate and personal property, and to provide for said party of the first part and his wife, Betsey, so long as they, or either of them, shall live, proper and necessary food, clothing, medicine, and medical attendance and nurses, and in all things providing for them everything necessary and proper to make the remaining portion of their lives comfortable and enjoyable, as suited to their station in life; to pay all taxes and charges on said real estate and personal property whenever the same shall be payable by law. And it is mutually agreed that said second party shall have a home in the dwelling on said land, and shall enjoy and use said land and personal property in common with said first party, under the direction and control of said first party; and in consideration of the promises herein made the said first party does hereby sell and convey to said sec-

ond party all of his personal estate of every name and nature, to take effect and pass to said second party at the death of said first party, and not sooner."

The deed and agreement were both placed upon record. Jenkins lived with Wells and his wife upon the farm after the execution of these papers, and it is found by the court that he performed his agreement to care for them until Wells died, in April, 1895, and Mrs. Wells, June 13, 1895. After the death of Mrs. Wells, Jenkins deeded the farm, including the homestead, to Margaret Waltenberry, and the defendants in this action claim possession under her.

The court found that the deed from Wells to Jenkins was a valid deed of the homestead, and that the plaintiff had no title, and the plaintiff appeals.

*Edward S. Bragg*, of counsel, for the appellant.

For the respondents there was a brief by *Duffy & McCrory*, and oral argument by *J. H. McCrory*.

The following opinion was filed November 1, 1898:

WINSLOW, J. Both parties claim title under George Wells, and the sole important question in the case is whether the deed from Wells to Jenkins was a valid deed. If valid, then judgment for the defendants was right, but if not, then the plaintiff must recover as the sole heir of Wells.

The land in controversy was the homestead of Wells, and his wife was alive at the time the deed was made. The statute (R. S. 1878, sec. 2203) provides that "no mortgage or other alienation by a married man of his homestead, exempt by law from execution, shall be valid or of any effect as to such homestead without the signature of his wife to the same." It has been held by this court that this statute vests no estate in the homestead in the wife, but only operates as a disability upon the husband to alienate the homestead during the life of the wife without her consent. *Godfrey v. Thornton,* 46 Wis. 677. It has also been held by

this court that a deed of the homestead, made by the husband alone, which reserved to the grantor the "sole, free, and absolute use and control" thereof as long as the grantor and his wife, or either of them, should live, was a valid conveyance of the reversion of the estate after the termination of all homestead rights. *Ferguson v. Mason*, 60 Wis. 377. We are not disposed to overrule either of these decisions at the present time, although strongly urged to declare that the wife's homestead right during her husband's life is an estate which is now old enough to be christened. We prefer to leave the homestead right of the wife during her husband's life just as it was left in *Godfrey v. Thornton, supra*, namely, as a disability imposed upon the husband in favor of the wife, and not as an estate in land.

Nor, on the other hand, do we feel disposed to extend in the least the doctrines of *Ferguson v. Mason*. The court certainly went far enough when it held that when the husband alone deeds the homestead a reservation of an absolute life estate in the husband and wife satisfied the statute. It was very clearly intimated in that case that nothing short of this ought to be upheld, and very persuasive reasons were given why a conveyance which contained no reservation of the homestead right should be held void. Among these was the danger that the wife would be compelled to litigate her homestead rights frequently if an absolute deed without reservation were held to be a valid conveyance of the reversion, and it was said that such a conveyance is a standing menace to her homestead right, that the intention of the statute is to shield her from such a menace, and hence that the better rule is to hold a mortgage or other instrument of alienation of a homestead absolutely void. if, in terms, it conveys the whole estate, and wants the signature of the wife. We agree entirely with the reasoning, and with the result reached. Moreover, it seems to us that the same reasoning applies with equal force to condemn a con-

veyance which contains a reservation of the use for life in one clause joined with agreements which invade and circumscribe that use in another clause.

That this is the case before us is very clear. The deed and contract were executed at the same time, as part of the same transaction, were put on record at the same time, and must be construed together, even if they did not, in terms, refer to each other. Taking them both together, we find that, while there is a reservation of the use for life to the grantor and his wife and to the survivor of them, there is at the same time an agreement by which Jenkins is given rights which seriously impair and lessen the beneficial use of the homestead to the grantor and his wife. This provision is as follows: "It is mutually agreed that said second party [Jenkins] shall have a home in the dwelling on said land, and shall enjoy and use said land and personal property in common with said first party [George Wells], under the direction and control of said first party."

It would be a matter of some difficulty, perhaps, to determine the nature and extent of the estate or right which is attempted to be granted to Jenkins by this clause, but certain it is that, whatever it may be, it is an encroachment upon the homestead right. There cannot be a sole, free, and absolute use of the homestead in Wells or his wife so long as Jenkins has a right to occupy a part of the dwelling house, and enjoy and use the land in common with George Wells, even though such use be under the control of Wells.

Considering the rights attempted to be granted to Jenkins in their most favorable light, they still constitute an invasion of the homestead right. The homestead right is the right to a sole, free, and absolute use, or it is nothing. A use which must be exercised in common with another, both as to the house and as to the land, cannot by any course of reasoning be termed "sole, free, or absolute." If such an invasion of the homestead right as this be approved

because, forsooth, it is only a small one, where will the line be drawn? How great must the infringement be in order to render the transaction void under the statute? These questions clearly show that there can be, logically, no middle course. Either the homestead must be preserved in its integrity by the deed, or the deed must be set aside. It cannot depend upon the importance or size of the encroachment, but upon the fact whether it attempts to encroach upon the homestead right at all.

We conclude that the deed from Wells to Jenkins was void, because it did not preserve the homestead, but, on the contrary, distinctly invaded that right. The plaintiff was the sole heir at law of George Wells, and, as he died intestate, and his widow also died before the commencement of this action, the plaintiff is the owner of the land in question by descent. R. S. 1878, secs. 2270, 2271.

*By the Court.*— Judgment reversed, and action remanded with directions to enter judgment for the plaintiff in accordance with this opinion.

The respondents moved for a rehearing, and the following opinion was filed January 10, 1899:

WINSLOW, J. Upon motion for rehearing attention is called to an erroneous statement of fact in the opinion in this case, where it is said that the Jenkins deed and contract were put on record at the same time. It appears from the bill of exceptions, though not from the printed case, that the contract was not recorded until December 13, 1897, and after Jenkins had deeded the property to Margaret Waltenberry, and after the Waltenberry deed had been recorded. From this fact it is claimed that the defendant Waltenberry was a purchaser protected by the terms of the recording act. The time of the recording of the agreement makes no difference with the result of the case. The recitals in the deed

from Wells to Jenkins distinctly describe and refer to this agreement, and any purchaser of Jenkins was charged with notice of the contents of the agreement. *Reichert v. Neuser,* 93 Wis. 513.

*By the Court.*— Rehearing denied.