VAN BUREN v. STUBBINGS.

1. Sales—Conditional Sale—Standing Timber.

A contract of sale of standing timber under which the title is to remain in the seller and the lumber not to be removed from the place of manufacture until the purchase price is paid is a contract of conditional sale.

2. Same—Bona Fide Purchasers—Contracts.

Where the contract of conditional sale under which a person holds possession of standing timber is expressly referred to in the contract by which he sells it to another, no other notice of the terms of the original contract is necessary, and the original owner's title cannot be defeated except by a waiver upon which the subsequent purchaser has acted to his injury.

3. Replevin—Parties.

In replevin by the buyer of timber of one who held it under a contract of conditional sale, against the assignee of the owner of the land from which it was cut and who had sold it under said contract, other parties claiming interests in the estate of the assignor are merely nominal parties whose interests cannot be litigated in the suit.

4. Compromise and Settlement—Foreign Suit—Operation.

A buyer of standing timber under a contract of conditional sale sold the same to plaintiff for manufacture at mills both in this State and in Wisconsin. The buyer failed to pay for the stumpage and the landowner seized the manufactured lumber in Michigan and presented a claim against the buyer's assignee in Wisconsin which he afterwards compromised. *Held*, that such compromise did not settle a replevin suit brought by plaintiff in Michigan for the lumber seized by the landowner, nor operate to transfer title to the Michigan lumber to plaintiff.

Error to Gogebic; Shepherd, J., presiding. Submitted April 5, 1907. (Docket No. 22.) Decided July 13, 1907.

Replevin by Edgar R. Van Buren and Charles D. Bull, surviving partners of the Antigo Lumber Company,

against Wilson H. Stubbings, the Union Trust Company, and others. There was judgment for defendants, and plaintiffs bring error. Affirmed.

The litigation in this case grows out of the financial failure of Hoxie & Mellor, copartners, 17 years ago. Their affairs became complicated, and suits arose in Michigan, Wisconsin, and Illinois. Several parties to the suits are dead. One feature of the litigation has been in this court. *National Bank of Oshkosh* v. *First Nat. Bank of Ironwood*, 100 Mich. 485. The statement of facts in the appellants' brief covers 42 pages. We are met at the commencement of the appellees' brief with the statement—

"That the errors and omissions in printing the bill of exceptions, coupled with inaccurate statements as to the issues involved, render a statement of facts upon our part imperative."

Then follows a statement covering 40 pages. The difficulty and labor involved on the part of this court in making a concise and intelligent statement is apparent. The briefs of counsel cover, respectively, 179 and 297 pages, and are occupied mainly with a discussion of disputed issues of fact. We will, however, state as briefly as possible the facts which we conceive to be essential.

One Stubbings, being the owner of certain lands, made a preliminary contract October 8, 1889, with one Hutchinson, to sell and convey to him the pine timber thereon, estimated at 10,000,000 feet. The preliminary contract provided that the terms of the completed agreement of sale should be as follows: Hutchinson was to pay the taxes on the timber and land until the timber was cut and removed, to pay $500 cash, $2,000 when the completed agreement was made, and good negotiable notes for $10,000; balance price of $40,000 to be paid in one year from date of completed contract, with interest at 7 per cent. It further provided that:

"The title to said timber shall remain in said Stubbings

until the purchase money, interest and taxes herein mentioned are fully paid; and such purchase money, interest and taxes shall remain and be a lien upon said pine timber and the lumber manufactured therefrom, wherever the same may be, until such purchase money, interest and taxes are fully paid. The lumber sawed from said pine timber is not to be removed from place where manufactured until said purchase money, interest and taxes are paid. The one-half of said timber situated nearest the mill of the firm of Fair Brothers at Marenisco, the said Hutchinson shall have sawed and piled at the said mill by said firm, provided he can contract with said firm to do said sawing at rates as reasonable as he can obtain elsewhere, but said Hutchinson shall not pay said firm for said sawing and piling and shipping at less than $2.50 per thousand feet. The said Hutchinson shall have the right to enter upon, and take possession of the said described lands for the period of three years from date hereof, for the purpose of removing said timber under this contract, and in accordance with the condition to cut and remove to such mill as may be most convenient to him for the purpose of manufacturing, and that contract shall be good to Hutchinson or his assigns."

Two days afterwards Hutchinson assigned this preliminary contract to Hoxie & Mellor. The completed contract was not executed until May 9, 1890. That contract was not assigned to Hoxie & Mellor. Hoxie & Mellor proceeded to cut the timber under the contract of October 8th. The completed contract was substantially the same as the preliminary. The timber was to be removed within three years from the 8th day of October, 1889. That contract was, immediately after its execution, recorded in the office of the register of deeds of Gogebic county, and on June 12th was recorded at Antigo, in Langlade county, Wis.

Plaintiff, a copartnership known as the "Antigo Lumber Company," had two contracts with Hoxie & Mellor for the purchase of lumber, to be manufactured by them; one dated September 24, 1889, and the other January 8, 1890. The latter contract included not all the lumber, but only certain grades of it to be manufactured from the

Stubbings logs.  It expressly included the lumber to be manufactured "from the logs and timber purchased by said first parties (Hoxie & Mellor) from W. W. Hutchinson by assignment by said Hutchinson of a contract between Hutchinson and W. H. Stubbings, dated October 8, 1889, and assigned to said first parties October 10, 1889." The contract provided that the lumber was to be manufactured in a certain mill at Antigo, Wis., and at Marenisco, Mich.  It provided terms of payment.  Hoxie & Mellor were considered responsible, and unfortunately the Antigo Lumber Company made large advances greatly in excess of the lumber received.  Hoxie & Mellor failed September 6, 1890.  Prior to their failure, there had been manufactured in the mill at Antigo 2,352,148 feet, of which the plaintiffs had shipped 1,757,666 feet.  There had been manufactured and piled in Marenisco 909,068 feet, none of which had been shipped, and which is involved in this suit. Mr. Stubbings claims that he was in possession of the lumber in the millyard at Marenisco, and marked it with his initials prior to the failure.  This is disputed by the plaintiffs.  Plaintiffs also had placed their marks upon it, but had done no further act indicating possession.  Immediately upon the failure, Mr. Stubbings took possession under his contract.  Plaintiffs, claiming title to the lumber, brought this action of replevin December 2, 1890, gave Mr. Stubbings a bond as the statute requires, took possession of the property, and sold it.  For reasons, perhaps, unnecessary to state, this suit was not tried until 1905. Plaintiffs claim to be innocent purchasers without any knowledge of Mr. Stubbings' rights; that the contract between him and Hutchinson was in effect a chattel mortgage, and not a conditional sale; that he waived his claims under the contract; that the plaintiffs acted upon such waiver to their prejudice; and that therefore Stubbings and his assignee, the Union Trust Company, are estopped to assert title under the contract.  All the disputed issues of fact were submitted to the jury, who found a verdict for

the defendants for the amount due on the Stubbings contract.

The court instructed the jury that, if they found that Stubbings by words, acts, or conduct, waived the rights which he had to hold the lumber until the whole contract price was paid, and that the plaintiffs acted upon that waiver, they should find for the plaintiffs. The court also instructed the jury that Stubbings' assignee, the Union Trust Company, could recover only what was now due upon the contract, with interest thereon. It was conceded that, if the jury found for the defendants, the amount so due was $39,381.48, which was the amount of the verdict. The court further instructed the jury that the preliminary and completed contracts were in effect the same; that Hoxie & Mellor succeeded to all the rights of Hutchinson thereunder; that the contract was one of conditional sale; that plaintiffs were charged with the knowledge of its contents, and took the assignment subject to the rights of Mr. Stubbings therein. There were other issues of fact submitted to the jury, which it is immaterial to mention. Any further statement of facts essential will be made in connection with the points raised.

*Herb. M. Norris* (*Hurley & Jones* and *M. B. Rosenberry*, of counsel), for appellants.

*Belmont Waples* (*M. M. Riley* and *Charles R. Holden*, of counsel), for appellees.

Grant, J. (*after stating the facts*). 1. Mr. Stubbings was the owner of the property, the subject of the contract of sale. That contract expressly provided that the title should remain in him until the purchase price was paid, and that the lumber should not be removed from the place of manufacture until that price was paid. The books do not furnish a clearer case of conditional sale. We might cite many authorities from this and other courts, but the late case of *Bunday* v. *Machine Co.*, 143 Mich. 10 (5 L. R. A. [N. S.] 475), is sufficient. Plain-

tiffs' contract with Hoxie & Mellor expressly stated that
Hoxie & Mellor's sole title was derived from, and evi-
denced by, a contract between Stubbings and Hutchinson
and assigned by Hutchinson to Hoxie & Mellor. No
other notice of the terms of that contract was necessary.
*Town* v. *Gensch,* 101 Wis. 445; *Dwight* v. *Tyler,* 49
Mich. 614. Plaintiffs took no steps to ascertain what
that title was until Hoxie & Mellor had failed. Evidently
they did not deem it essential for their interests to do so,
as they regarded Hoxie & Mellor entirely responsible.
Mr. Stubbings took prompt steps to assert his rights.
His right of recovery can only be defeated by a waiver on
which the plaintiffs acted to their injury. This waiver
depended mainly upon the testimony of one of the plain-
tiffs and Mr. Stubbings. The jury have settled that dis-
puted question of fact in favor of the defendants. The
Union Trust Company is the assignee of Mr. Stubbings,
and the court very properly instructed the jury that the
other defendants were nominal defendants, and that their
verdict, if for defendants, would be in favor of Stubbings'
assignee, the Union Trust Company. There was no
question of fact to be left to the jury upon this point. If
any other parties have interests in the estate of Mr. Stub-
bings, this suit is not the proper proceeding in which to
assert them. The other errors assigned relate to the ad-
mission and rejection of testimony.

2. Plaintiffs offered in evidence the record of the pro-
ceedings had in the circuit court for Langlade county,
Wis., in the matter of the assignment of Hoxie & Mellor,
assignors, Lyman E. Brown, assignee. That record con-
sisted of a petition filed by Mr. Stubbings asking that the
assignee of Hoxie & Mellor be directed to pay him the
value of the lumber which was manufactured at the An-
tigo mill, taken possession of and disposed of by the as-
signee, an amended petition, answers of the different par-
ties interested, testimony taken by the referee, and the
final orders or decrees of settlement. That claim was
finally settled by stipulation for $12,000, paid by the Wis-

consin assignee to the assignee of Mr. Stubbings, and
$2,000 to Mr. Stubbings for expenses, etc. These pro-
ceedings were at first admitted in evidence, but, on mo-
tion of defendants, were finally stricken from the record
and excluded from the consideration of the jury. The
claim is that that settlement settled all Mr. Stubbings'
claims for this lumber, as well that in Michigan as that in
Wisconsin. That settlement was ratified by the court,
and was declared in the order "to be in full satisfaction,
payment, and discharge of any and all liability of or
claim against the estate of said assignee thereof by or in
favor of the plaintiff, Wilson H. Stubbings, or any person
or persons, corporation or corporations, claiming through
or under him, and said assignee shall take proper receipts
therefor." The money was paid, the proper receipts given,
and the plaintiffs in this case credited with it by the direc-
tion of the court below at the request of the plaintiffs.

The assignee of Hoxie & Mellor in Wisconsin had no
interest in, or control over, the lumber in Michigan.
That was in the exclusive control of Mr. Stubbings until
it was replevined by the plaintiffs. The decree or order
in Wisconsin related solely to the lumber situated at An-
tigo. The claim is that there was an understanding that
Mr. Stubbings should prosecute the Appleton suit until he
had exhausted his remedy against the lumber in Wiscon-
sin, and that the plaintiffs should furnish the money to
conduct that litigation, and that a settlement was made
without notifying them. It is, perhaps, a sufficient an-
swer to plaintiffs' contention to say that there is no show-
ing that a continuance of that expensive litigation would
have resulted in a larger amount than was received.
However that may be, it is apparent that this Wisconsin
litigation was carried on mainly in the interest of the
plaintiffs. We think it also evident that their attorneys
had cognizance of the proceedings in the Wisconsin court.
But, whether they had any knowledge of the proposed
action of the court, it is certain that upon ascertaining it
they took no direct steps to have the order vacated, which

they might have done, as they were the principal parties interested. Instead, they seek by a technicality to impose the entire loss upon Mr. Stubbings and his assignee. Mr. Stubbings had shown no intention to abandon his title to the property in Michigan. He and his assignee acted in good faith in instituting and in settling the suit brought in Wisconsin. That settlement was ratified by the court. We are therefore of the opinion that the settlement of the Wisconsin suit did not settle the suit in Michigan, and did not operate to convey the title to the Michigan lumber to the plaintiffs. It would unnecessarily lengthen this opinion to enter into a detailed statement of the facts in regard to the Wisconsin litigation, which covers more than 100 pages of the record. We think the proceedings in that suit were properly excluded from the consideration of the jury.

The other questions raised during the progress of the trial are not of sufficient importance to discuss. We find no reversible error in the rulings of the court.

This was a long and hotly-contested litigation. The case was carefully tried, and was fairly submitted to the jury without any substantial error during the entire trial, and the judgment is affirmed.

BLAIR, MONTGOMERY, HOOKER, and MOORE, JJ., concurred.